United States District Court
Southern District of Texas
**ENTERED**
April 07, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ARTURO RICO ESPINOZA, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 1:19-cv-226 |
| | § | |
| CARLOS GARZA, ET AL., | § | |
| Defendants | § | |

**MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

The Court is in receipt of "Defendants' 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's Complaint with Authorities" (hereinafter, Defendants' "Motion" or "Motion to Dismiss"). Dkt. No. 15. For the reasons provided below, it is recommended that the Court: (1) **GRANT** Defendants' Motion, in part; (2) **DISMISS** pro se Plaintiff Arturo Rico Espinoza's Complaint as time-barred; and (3) **DIRECT** the Clerk of Court to **CLOSE** this case.

**I. Venue and Jurisdiction**

Venue is proper in this District because the alleged events giving rise to Espinoza's lawsuit occurred here. *See* Dkt. No. 1 at 1-2 (describing events and omissions occurring in Cameron County, Texas); 28 U.S.C. § 1391(b)(2) (noting that a civil action may be brought in the judicial district where "a substantial part of the events or omissions giving rise to the claim occurred"). The Court has federal question subject matter jurisdiction because Espinoza has alleged violations of 42

U.S.C. § 1983. *See* Dkt. No. 1 at 1, 5, 11; 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

## II. Background and Procedural History

Espinoza filed his Complaint against "[L]ieutenant" Carlos Garza and Sheriff Omar Lucio in this Court on December 10, 2019. Dkt. No. 1 at 1.[1] He indicates that he is suing both Defendants in their official capacity. *Id.* at 5-6 (stating that both Defendants were at all relevant times "acting in the course and scope of their employment."); *see also id.* at 2 (naming Lucio as a defendant in his "Official Capacity as Sheriff of Cameron County"). He contends that Defendants are liable under 42 U.S.C. § 1983 for violating his right to be free from cruel and unusual punishment under the Eighth Amendment, as applied to the states through the Fourteenth Amendment. *Id.* at 1, 5, 11. He has also asserted a Texas common law negligence claim. *Id.*[2] In support of these claims, he alleges that:

---

[1] Espinoza does not specify when he placed his Complaint in the prison mailing system. Dkt. No. 1 at 6. However, as it appears he signed his Complaint on December 10, 2019, the Court will consider it filed on that date. *See Houston v. Lack*, 487 U.S. 266 (1988) (establishing "mailbox" rule that a prisoner's document is deemed filed at the time of delivery to prison authorities for forwarding to the court); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995) (finding that mailbox rule applies to § 1983 cases).

[2] Espinoza states that Defendants' actions "also constitute negligence for for which they are answerable under Texas Civil Code article 101.023." Dkt. No. 1 at 5 (errors in original). Section 101.023 of the Texas Civil Practice and Remedies Code places limitations on the amount of money damages state and local governments must pay; and, is not a statutory source of negligence liability. TEX. CIV. PRAC. & REM. CODE § 101.023 ("Limitation on Amount of Liability"). Absent any other statutory reference, the Court presumes that Espinoza is attempting to raise a negligence claim under Texas common law.

1. In January of 2015, while being detained on federal charges at the Cameron County Detention Center, approximately nine inmates with gang affiliations punched him in the head, back, and ribs for four to five minutes until he became unconscious. Dkt. No. 1 at 2, 4.[3]

2. Prior to being beaten, he verbally informed "Deputy Sheriffs" and a "jail official" that he was not a gang member and that placing him in custody with gang members would be dangerous. *Id*. at 2-5. Despite his protests, he was placed with gang-member inmates who discovered that he was not affiliated with their gang. *Id*. In making a request to be moved into protective custody, he verbally "described the activities of the other inmates and the implicit threats that were being made to his well-being." *Id*. at 4 (errors in original). In addition to identifying the inmates who were threatening him, he directed "verbal requests" for protection "to the official in charge defendant Garza and Lucio[.]" *Id*. at 4 (errors in original).[4]

3. He made his requests verbally because he feared that writing them down would increase the risk that he would be harmed by the gang-member inmates. *Id*. at 3 ("Defendant Lucio created a system in the jail whereby there was no security

---

[3] Espinoza's records reveal that he was a pretrial detainee in January of 2015. *See United States v. Rico-Espinoza*, 1:14-cr-1002-1, Minute Entry dated February 3, 2015 (documenting Espinoza's plea of guilty to federal illegal reentry charges on February 3, 2015).

[4] Espinoza's Complaint is difficult to decipher and inconsistent in places. *Compare* Dkt, No. 1 at 3 (stating that he "did not include details of his concerns" when asking jail officials for protection), *with id*. at 4 (stating that he informed jail officials of the "implicit threats that were being made to his well-being."). He is also somewhat ambiguous regarding whether he specifically informed both Defendants of the substantial risk of harm he allegedly faced. *See id*. at 3-5. Nevertheless, as explained below, Espinoza's claims are specific enough to overcome Defendants' Rule 12(b)(1) standing arguments.

and/or confidentiality in communications between incarcerated individuals and the jail staff. . . . Plaintiff naturally did not included details of his concerns in his verbal requests for fear that the danger he faced would be increased should other inmates become aware of his complaints.") (errors in original). He feared other inmates would discover any written complaints he might make because Lucio "operated the jail with a policy, practice or custom whereby inmates could not communicate their safety concerns to jail officials for fear that any complaints they put in in writing would be accessible to other inmates and thus increase their danger." *Id.* at 5 (errors in original).

4. Defendants did not respond to his repeated complaints and requests for protection. *Id.* at 3-5. Instead, they were deliberately indifferent to the serious risk of harm he faced. *Id.* at 5. In addition to failing "to respond to plaintiff's legitimate and specific safety concerns[,]" Garza "focused exclusively on how he could use plaintiff to his own advantage." *Id.* at 5.

5. The beating caused damage to his head and "back ribs." *Id.* at 4. As a result, he has since endured "permanently strong pain" and a "permanent fear" of being placed with gang member inmates. *Id.*

### III. Legal Standards

A. **FED. R. CIV. P. 12(b)(1).** "Federal courts are courts of limited jurisdiction[.]" *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). The

party asserting jurisdiction "constantly bears the burden of proof" to show that jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

> When a party files a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id*. The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id*. (citation omitted) (citing *Paterson [v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)]). If, however, the defendant supports the motion with affidavits, testimony, or other evidentiary materials, then the attack is "factual" and the burden shifts to the plaintiff to prove subject matter jurisdiction by a preponderance of the evidence. *Id*.

*MacKenzie v. Castro*, No. 3:15-CV-0752-D, 2016 WL 3906084, at *2 (N.D. Tex. July 19, 2016) (citations omitted).

**B. FED. R. CIV. P. 12(b)(6).** Dismissal is appropriate under Rule 12(b)(6) if the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a). *Richter v. Nationstar Mortgage, LLC*, Civil Action No. H–17–2021, 2017 WL 4155477, at *1 (S.D. Tex., 2017). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To withstand a Rule 12(b)(6) challenge, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544, 570. This means that a complaint, taken as a whole, "must contain either direct or inferential allegations respecting all the material elements

necessary to sustain recovery under *some* viable legal theory[.]" *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) (internal quotation marks omitted; emphasis and omission in original)).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Id.* Although the Supreme Court in *Twombly* stressed that it did not impose a probability standard at the pleading stage, an allegation of a mere possibility of relief does not satisfy the threshold requirement of Rule 8(a)(2) that the "plain statement" of a claim include factual "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Id.* at 557. A court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions[.]" *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

**C. 42 U.S.C. § 1983.** Section 1983 of Title 42 does not grant substantive rights. Instead, it provides a vehicle for a plaintiff to vindicate those rights that are protected by the United States Constitution and other federal laws. *Albright v. Oliver,* 510 U.S. 266, 271 (1994). Specifically, § 1983 provides a cause of action for individuals who have been "depriv[ed] of [their] rights, privileges, or immunities

secured by the Constitution and laws" of the United States by a "person" acting under color of state law. *Id*. at 315. A plaintiff seeking § 1983 relief must show: (1) that the conduct complained of was committed under color of state law, and (2) that the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States. *See Hernandez v. Maxwell*, 905 F.2d 94, 95 (5th Cir. 1990) (citing *Daniel v. Ferguson*, 839 F.2d 1124, 1128 (5th Cir. 1998)).

> The Supreme Court has explained that, according to the traditional definition of "acting under color of state law," the defendant in a § 1983 action must have "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L. Ed. 1368 (1941)). In other words, "the deprivation must be caused by the exercise of some right or privilege created by the [s]tate or by a rule of conduct imposed by the [s]tate or by a person for whom the State is responsible." *Lugar v. Edmundson Oil Co*., 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). . . ."State employment is generally sufficient to render the defendant a state actor." *West*, 487 U.S. at 49.

*Boyter v. Brazos Cnty*., NO. H-09-4132, 2011 WL 1157455, at*7 (S.D. Tex., Mar. 28, 2011).

"The statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (citing *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993)). The Fifth Circuit has "recognized that Texas's two-year statute of limitations for personal injury actions applies to § 1983 claims filed in the state." *King-White v. Humble Indep. Sch. Dist*., 803 F.3d 754, 759 (5th Cir. 2015); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 2005).

"[A] section 1983 action generally accrues when a plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999) (quoting *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989)). The prescriptive period is tolled during an inmate's efforts to timely and properly exhaust administrative remedies. *Harris*, 198 F.3d at 158–59.

**D. The Constitutional Prohibition Against Cruel and Unusual Punishment.** The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment. This provision applies to the States through the Fourteenth Amendment. *Roper v. Simmons*, 543 U.S. 551, 560 (2005). Further, although "[t]he standard is the same as that for a *prisoner* under the Eighth Amendment," § 1983 claims brought by *pretrial detainees* invoke the protections of the Fourteenth Amendment." *Cadena v. El Paso County*, 946 F.3d 717, 727 (5th Cir. 2020) (emphasis added). Fourteenth Amendment § 1983 claims brought by pretrial detainees may be asserted as "conditions of confinement" claims, or as "episodic act or omissions" claims. *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 644–45 (5th Cir. 1996)).

In general, conditions-of-confinement claims challenge the restrictions and impositions placed on an inmate, such as the those caused by overcrowding, extreme temperatures, or deprivations of phone or mail privileges. *Garza v. City of Donna*, 922 F.3d 626, 633–34 (5th Cir. 2019). Conversely, episodic-acts-or-omissions claims challenge the application of a policy or custom by a jail official in a particular instance. *Estate of Henson v. Wichita County*, 795 F.3d 456, 466–67 (5th Cir. 2015).

To prevail against a municipality, a pretrial detainee bringing an episodic-act-or-omission claim must show: "'(1) that the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference.'" *Garza*, 922 F.3d at 633 (quoting *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008)); *Feliz v. El Paso Cty.*, No. EP-19-CV-277-KC, 2020 WL 1081612, at *3-4 (W.D. Tex. Feb. 27, 2020) (same).

The duty of prison officials to protect prisoners from violence inflicted by other prisoners is well-established. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Nevertheless, such officials are only liable for their failure to protect a prisoner when they are "deliberately indifferent to a substantial risk of serious harm." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). The harm must be serious from an objective point of view. *Farmer v. Brennan*, 511 U.S. 825, 834. "Deliberate indifference" means that the official "knows of and disregards an excessive risk to inmate health or safety[.]" *Id.* at 837. Further, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* The question of whether an official had the requisite knowledge is a question of fact. *Id.* "It is subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

## IV. Discussion

As demonstrated below, this case is subject to dismissal because it is time-barred. *See infra* at pgs. 16-18. Nevertheless, because Defendants have challenged this Court's subject matter jurisdiction, the Court will first address Defendants' arguments that jurisdiction is lacking.

**A. Subject Matter Jurisdiction**. Defendants' subject matter jurisdiction arguments are scattered throughout their Motion and are neither entirely clear, nor cohesively organized. Their statements/arguments on the subject are as follows:

- "Plaintiff's claims against Defendants [cannot] survive for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) based on lack of standing." Dkt. No. 15 at 1.

- "Plaintiff lacks standing; therefore as a matter of law his suit must be dismissed. Plaintiff did not suffer any deprivation of constitutional or federal rights that are fairly traceable or attributable to any act or omission of any of the Defendants." *Id.* at 2 (errors in original).

- "Plaintiff did not establish the elements of standing; as such the Court must dismiss the suit. See *Little v. KPMG LLP.*, 575 F. 3d 533, 540-41 (5th Cir. 2009). The elements of standing are injury in fact, causation and redressability. *Steel Co. V. Citizens for a Better Environment*, 523 U.S. 83, 103-04 (1998); *Little* 575 F.3d at 540. Plaintiff has suffered no legally cognizable injury of constitutional proportion nor has he suffered legally cognizable damages as the result of any conduct or misconduct, act or omission of Defendants. Plaintiff lacks standing because he does not and cannot allege a personal injury that is fairly traceable to the any of the Defendants' allegedly wrongful conduct and likely to be redressed by the requested relief. *See Allen v. Wright*, 468 U.S. 737, 751 (1984)." *Id.* at 6 (errors in original).

- "Defendants raise the official capacity defense. Defendants ask the court to dismiss Plaintiff's suit because of lack of subject matter jurisdiction pursuant to FRCP 12(b)1. Defendants are entitled to sovereign, qualified and/or official immunity." *Id.* at 10 (errors in original).

- "Plaintiff has failed to plausibly plead that he has suffered a constitutional deprivation that is fairly traceable to any of the Defendants and therefore fails to establish he has standing to bring this suit." *Id*. at 15 (errors in original).

- "Defendants pray the Court dismiss Plaintiff's suit due to lack of standing[.]" *Id*.

Defendants' subject matter jurisdiction arguments fall into two categories: (1) arguments that the Court lacks jurisdiction due to their immunity; and (2) arguments that the Court lacks jurisdiction due to Espinoza's lack of standing. *See* Dkt. No. 15 at 6, 10 (characterizing their jurisdictional arguments as standing and immunity arguments). The Court will address each jurisdictional argument according to its type.

**1. Sovereign Immunity**. Aside from one conclusory assertion that they are entitled to sovereign immunity (Dkt. No. 15 at 10), Defendants do not mention sovereign immunity in their Motion to Dismiss. In Texas, sovereign immunity generally does not apply to protect county officials sued in their individual or official capacities from § 1983 lawsuits. *Stem v. Ahearn*, 908 F.2d 1, 4-5 (5th Cir. 1990); *Flores v. Cameron Cnty.*, 92 F.3d 258, 263-65 (5th Cir. 1996). Having failed to brief the issue, or otherwise show how they are entitled to sovereign immunity, Defendants are not entitled to a Rule 12(b)(1) dismissal of Espinoza's federal claims on sovereign immunity grounds.

**2. Official Immunity**. Defendants assert an "official capacity defense" on the grounds that they may raise any defense their "governmental entity may raise." Dkt. No. 15 at 10. In support of this assertion, they state: "There is nothing alleged that

qualified immunity for federal claims should not apply, assuming, without admitting, that there is any allegation sufficient to indicate individual liability under federal law at all to which qualified or official immunity may apply." *Id*. at 11 (errors in original). Aside from these contentions, Defendants do not elaborate upon the defense in their Motion to Dismiss.

Although Texas recognizes an official immunity defense to claims based on state law, the defense is inapplicable to claims based on federal law. *See Crostley v. Lamar Cnty., Tex.*, 717 F.3d 410, 424 (5th Cir. 2013) (noting that "official immunity" applies to state-law based claims and that Texas's "official immunity defense" is "substantially the same" as the qualified immunity defense applicable to claims based on federal law). To the extent that Defendants are suggesting that the Court lacks jurisdiction over Espinoza's federal claims due to their official immunity, then, they are not entitled to dismissal under Rule 12(b)(1).

**3. Qualified Immunity**. Qualified immunity is a form of immunity available to individuals. Government officials sued in their official capacities cannot assert qualified immunity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466-467 (5th Cir. 1999). Espinosa has not stated that he is suing either Defendant in their individual capacities. To the contrary, he indicates that he is suing both Defendants in their official capacity. Dkt. No. 1 at 5-6 (stating that both Defendants were at all relevant times "acting in the course and scope of their employment."); *see also id*. at 2 (naming Lucio as a defendant in his "Official Capacity as Sheriff of Cameron County"). More importantly, qualified immunity is

an affirmative defense that is properly raised under Rule 12(b)(6) or Rule 56. *Harlow v. Fitzgerald*, 457 U.S. 800, 815, (1982). It is not jurisdictional and cannot constitute grounds for dismissal under Rule 12(b)(1). *Id*; *Richard v. Capps*, No. 3:07CV00138-M(BH), 2007 WL 2428928, at *1–2 (N.D. Tex. Aug. 28, 2007) ("Rule 12(b)(1) is not a proper vehicle to assert dismissal on grounds of qualified immunity. . . .The Fifth Circuit has held that the defense of qualified immunity should be analyzed under a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment.") (citing *Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir. 1996)); *Neal v. Davis*, 475 F. App'x 690, 692 (10th Cir. 2012) ("[Q]ualified immunity is a defense on the merits, not a jurisdictional bar. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815[.]"); *Bernier v. Trump*, 299 F. Supp. 3d 150, 157–58 (D.D.C. 2018) ("Qualified immunity is not a jurisdictional issue, but rather a defense on the merits.") (citing *Nevada v. Hicks*, 533 U.S. 353, 373 (2001; *Crawford–El v. Britton*, 523 U.S. 574, 587 (1998)). Defendants Rule 12(b)(1) qualified immunity arguments are without merit and do not entitle them to relief.

**4. Standing**. Defendants contend that this Court lacks jurisdiction because Espinoza lacks standing. More specifically, Defendants state that he lacks standing "because he does not and cannot allege a personal injury that is fairly traceable to the any of the Defendants' allegedly wrongful conduct and likely to be redressed by the requested relief." Dkt. No, 1 at 6 (errors in original). Defendants' argument here ignores the content of Espinoza's claims. Liberally construed, the direct inferences from Espinoza's allegations are that: (1) he informed both Defendants of the specific threats being made against him by specific inmates, due to his lack of gang affiliation,

and requested protection; (2) neither Defendant timely responded, or provided the requested protection; (3) as a result, he was beaten until he lost consciousness, causing him serious injury and permanent physical pain and psychological fear; (4) Defendants were deliberately indifferent to the substantial risk that he would be seriously harmed, (5) Defendants knowingly maintained a custom of allowing only verbal complaints, and were aware that such a custom prevented inmates from safely communicating their requests for protection; (6) Defendants acts and omissions were done under the color of state law, and within the course and scope of their employment. Dkt. No. 1 at 2-6.

A lawsuit "may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682-683 (1946). In general, however, a "failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Id*. at 682. The Fifth Circuit has also held that "dismissal for want of jurisdiction is disfavored as a matter of policy" when a federal claim is apparent on the face of a complaint. *Young v. Hosemann*, 598 F.3d 184, 188 (5th Cir. 2010).

> Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) (for failure to state a claim upon which relief can be granted) or

> Rule 56 (summary judgment) — both of which place greater restrictions on the district court's discretion.

*Id.* (quoting *Williamson*, 645 F.2d 404, 415-16 (5th Cir. 1981) (en banc)).

The Court need not determine if Espinoza's Complaint states a claim for relief under § 1983 which can survive a Rule 12(b)(6) challenge because Espinoza's claims are time-barred. However, as the above-summarized federal substantive law reveals *(see supra* at pgs. 6-9*),* his allegations are not clearly immaterial, wholly insubstantial, frivolous, or made solely for the purpose of obtaining jurisdiction. It is, therefore, not proper to dismiss his federal claims under Rule 12(b)(1). *See Bell v. Hood*, 327 U.S. 678, 682-683 (noting that dismissal under Rule 12(b)(1) is improper when an alleged claim is not clearly immaterial, wholly insubstantial, frivolous, or made solely for the purpose of obtaining jurisdiction); *Young v. Hosemann*, 598 F.3d 184, 188 (same). Defendants standing arguments lack merit and do not entitle them to dismissal under Rule 12(b)(1).[5]

**B. Statute of Limitations.** Espinoza's Complaint contends that Defendants are liable under 42 U.S.C. § 1983 for violating his right to be free from cruel and

---

[5] It should be noted here that Defendants' Motion repeatedly misstates Espinoza's allegations. *See, e.g.*, Dkt. No. 15 at 8-9 (stating, incorrectly, that Espinoza's Complaint fails to allege "any physical injury in connection" with Defendants' failure to transfer him away from the inmates who were threatening him). More critically, Defendants' Motion also repeatedly misstates the law. *See, e.g., id.* at 7 (stating that the Court may dismiss Espinoza's suit because his Complaint "wholly failed to allege he exhausted administrative remedies."). Lack of exhaustion of "available" administrative remedies is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). As such, Espinoza had no duty to allege that he had exhausted administrative remedies in his Complaint. *See id.* at 212. Defense counsel has made the same and similar misrepresentations in the past. *See, e.g., Russell v. Carillo, et al*, Civil Action No. 1:11-cv-143; Dkt. No. 79 at 17-19. The Court has brought these misrepresentations to defense counsel's attention. *See id.* Future misrepresentations to the Court may subject defense counsel to sanctions.

unusual punishment under the Eighth Amendment, as applied to the states through the Fourteenth Amendment. Dkt. No. 1 at 1, 5, 11. He has also asserted a Texas common law negligence claim. *Id*. As noted above, "[t]he statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (citing *Pete v. Metcalfe*, 8 F.3d 214, 217). The Fifth Circuit has "recognized that Texas's two-year statute of limitations for personal injury actions applies to § 1983 claims filed in the state." *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 2005). "[A] section 1983 action generally accrues when a plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" *Harris v. Hegmann*, 198 F.3d 153, 157 (quoting *Burrell v. Newsome*, 883 F.2d 416, 418). The prescriptive period is tolled during an inmate's efforts to timely and properly exhaust administrative remedies. *Harris*, 198 F.3d at 158–59.

The statute of limitations for Texas common law negligence is also two years. *See Sivertson v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Back Certificates WAMU Series No. 2007-HE2 Tr.*, 390 F. Supp. 3d 769, 784 (E.D. Tex. 2019) ("The applicable limitations for negligent misrepresentation, negligence, and gross negligence is two years. *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998); TEX. CIV. PRAC. & REM. CODE § 16.003(a); *F.D.I.C. v. Henderson*, 849 F. Supp. 495, 497 (E.D. Tex. 1994)"). When the discovery rule applies,[6] the two-year

---

[6] Generally, the discovery rule is "limited to situations where the nature of the injury is 'inherently undiscoverable' and 'objectively verifiable.'" *Whiddon v. Chase Home Fin., LLC*,

limitations period begins to run when "the plaintiff discovers, or through the exercise of reasonable diligence should have discovered, facts indicating that he has been injured." *Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 688 (citing *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 357 (5th Cir. 2008)).

Espinoza states that the beating giving rise to his lawsuit occurred sometime in January of 2015. Dkt. No. 1 at 4. His limitations period began to run at that point, as he has alleged no facts indicating that the discovery rule applies, or that he experienced a justifiable delay in discovering his own injuries. Adding two years to January 2015, the limitations period for his negligence and § 1983 claims expired in January of 2017. TEX. CIV. PRAC. & REM. CODE § 16.003(a); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759. Espinoza did not file his Complaint until December 10, 2019. Dkt. No. 1 at 10. His claims are, therefore, untimely by more than two years and ten months.

Espinoza has not responded to Defendants' Motion to Dismiss, nor alleged any facts indicating that his limitations period should be equitably tolled. He has also failed to allege any facts indicating that he attempted to timely exhaust available administrative remedies. Accordingly, he has not timely demonstrated an entitlement to statutory or equitable tolling of his limitations period. *See Harris*, 198 F.3d at 158–59 (noting that a limitations period is tolled during an inmate's efforts to timely and properly exhaust administrative remedies). Espinoza's case should be dismissed as time-barred pursuant to Rule 12(b)(6).

---

666 F. Supp. 2d 681, 688 (E.D. Tex. 2009) (citing *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006)).

## V. Recommendation

For the foregoing reasons, it is recommended that the Court: (1) **GRANT** Defendants' Motion, in part; (2) **DISMISS** Espinoza's Complaint as time-barred; and (3) **DIRECT** the Clerk of Court to **CLOSE** this case.

## VI. Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

**SIGNED** on this 6th day of April, 2020.

Ignacio Torteya, III
United States Magistrate Judge